CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 05 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BROOKS JAMES TERRELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 7:11-cv-00024 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| MR. RUPERT, et al., | ) | By: Hon. James C. Turk |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

Plaintiff, Brooks James Terrell ("Terrell"), an inmate formerly incarcerated at United States Penitentiary Lee, ("USP Lee"), in Jonesville, Virginia,[1] filed this action pro se requesting monetary damages and a declaration that Department of Justice Program Statement 5217.01 ("PS 5217.01") is unconstitutional, pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Terrell named Dale Rupert and Harold Watts, employees of the Federal Bureau of Prisons ("BOP"), and the BOP as defendants in the case.[2] The gravamen of Terrell's complaints relate to his assignment to the Special Management Unit ("SMU"). Jurisdiction over this matter is proper pursuant to 28 U.S.C. § 1331.

Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Dkt No. 23). Terrell responded to the Defendants' motion and concurrently filed a cross-motion for summary judgment. (Dkt. No. 30). Defendants filed a reply. (Dkt. No. 31). Also before the Court at this time are Terrell's Motion for Discovery (Dkt. No. 32) and the Defendants' Response (Dkt. No. 34), Terrell's Motion for a Jury Trial (Dkt. No. 33), and Terrell's Motion for Sanctions (Dkt. No. 41). For the reasons explained below, the Court

---

[1] Terrell is currently incarcerated at FCI Talladega in Alabama.
[2] The Court dismissed the BOP as an improper defendant in a Bivens action. (Dkt. No. 9).

1

**GRANTS** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment; **DENIES** Terrell's Cross-Motion for Summary Judgment; **DENIES** Terrell's Motion for Discovery; and **DENIES** Terrell's Motion for Sanctions. Furthermore, the Court **DISMISSES** as moot Terrell's Motion for a Jury Trial.

## I. Facts

Terrell was an inmate at USP Lee at all times relevant to this action. Although Terrell's complaint and response to the Defendants' motion to dismiss, or in the alternative, motion for summary judgment allege a litany of claims, the crux of Terrell's complaints revolve around the allegation that he was denied due process prior to being assigned to the SMU Program in May 2009. The Defendants, Dale Rupert and Harold Watts, are employed by the BOP. Dale Rupert ("Hearing Officer Rupert") is a USP Lee Discipline Hearing Officer and Harold Watts ("Administrator Watts") is the Administrator of the National Inmate Appeals Administration in Washington, D.C.

Terrell's complaint contains five claims. First, Terrell argues that procedural defects with the hearing on his referral to the SMU Program violated his due process rights. Specifically he alleges that (1) the hearing was not impartial because Hearing Officer Rupert adjudicated prior hearings regarding Terrell, (2) Hearing Officer Rupert ignored the requirement that the "Regional Disciplinary Administrator" serve as his SMU Hearing Officer, and (3) Terrell was denied the opportunity to present exculpatory evidence and the right to counsel at the hearing. Second, Terrell claims that he was forced into psychological treatment without medical justification or a hearing in violation of his rights. Third, Terrell asserts that his appeal of the decision assigning him to the SMU Program did not receive "any meaningful review" by Administrator Watts (Dkt. No. 1-1). Fourth, Terrell claims that assignment to the SMU

2

Program, which authorizes isolation and use of force, constitutes torture and violates his human rights. Fifth, Terrell argues that PS 5217.01 was promulgated in violation of the Administrative Procedure Act ("APA") and is unconstitutional.

In his response to Defendants' motion to dismiss, or in the alternative, motion for summary judgment and cross-motion for summary judgment, (Dkt. No. 30), Terrell expands on the claims made in his complaint and offers new arguments.[3] With respect to the new arguments, first, Terrell asserts that assignment to the SMU Program caused him to suffer "atypical and significant hardship." Second, Terrell claims that he did not receive notice of his SMU Hearing. Third, Terrell states that his SMU Hearing notice was not signed by a third-party witness. Fourth, Terrell claims that PS 5217.01 violates the Ex-Post Facto Clause. Finally, Terrell argues that the Defendants are not entitled to qualified immunity.

The uncontested facts are as follows. Since arriving at USP Lee in September 2008, Terrell was involved in numerous incidents of violent and disruptive behavior. In April 2009, Terrell was referred for placement in the SMU Program. A hearing on Terrell's placement was scheduled and held on April 17, 2009. Hearing Officer Rupert was assigned to be Terrell's SMU Hearing Administrator. Previously, Hearing Officer Rupert served as a Discipline Hearing Officer in disciplinary actions involving Terrell; however, Hearing Officer Rupert was not a victim or witness in any of those proceedings. At the hearing, Terrell appeared in person and gave an oral statement, but did not present any documentary evidence or witness statements.

On the basis of the evidence adduced at the SMU Hearing and from the referral process itself, Hearing Officer Rupert recommended Terrell be placed in the SMU Program. On his recommendation form, Hearing Officer Rupert indicated that placement was recommended

---

[3] Terrell expands on the claims noted in his complaint, specifically his claims that Hearing Officer Rupert was not a proper SMU Hearing Officer.

3

because "greater management of [Terrell's] interaction with other persons is necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public." (Dkt. No. 1-3 at 4). Hearing Officer Rupert's recommendation was reviewed by the Regional Director, who concurred with Hearing Officer Rupert's recommendation. The recommendation was then passed to the Designation and Sentence Computation Center ("DSCC") for approval. Id. at 6. The DSCC approved Hearing Officer Rupert's recommendation. Id. Terrell appealed the decision to the office of General Counsel and, after review, Administrator Watts denied the appeal. (Dkt. No. 1-2 at 1-2).

The only facts that the parties contest are whether Terrell received notice of his SMU Hearing and the content of that notice. Defendants allege that Terrell received the SMU Hearing notice on April 14, 2009, and refused to sign it. In support of their allegation, Defendants have submitted a copy of the completed SMU Hearing notice form. (Dkt. No. 24-2). Terrell, however, alleges that he did not receive notice of the hearing, and that the copy of the hearing notice submitted by Defendants was not completed until after the SMU Hearing took place. In support of his allegation Terrell submitted two copies of the hearing notice form, one which appears to be incomplete, (Dkt. No. 30-2, Exhibit E), and one that is identical to the form submitted by Defendants, (Dkt. No. 30-2, Exhibit E-2). The difference between the two forms is that in the incomplete form lacks signatures other than Hearing Officer Rupert's on page 3, and on page 1 indicates a time and date of 4-14-06, 6:20pm. (Dkt. No. 30-2, Exhibit E). The complete form includes all the signatures on page 3, and on page 1 indicates a time and date of 4-14-09, 6:15pm and contains other handwritten notes at the bottom of page 1. (Dkt. No. 30-2, Exhibit E-2).

## II. Applicable Law

### A. <u>Pro Se</u> Complaint in a Bivens Action

To state a claim under <u>Bivens</u>,[4] the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a constitutionally protected interest. <u>Middlebrooks v. Leavitt</u>, 525 F.3d 341, 350 (4th Cir. 2008); <u>Brown</u>, 250 F.3d at 800. Pro se pleadings are held to a less stringent standard than those drafted by attorneys. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). As such, the Court is required to liberally construe the pleadings of <u>pro se</u> plaintiffs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, (1976); <u>Loe v. Armistead</u>, 582 F.2d 1291, 1295 (4th Cir. 1978). The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. <u>Barnett v. Hargett</u>, 174 F.3d 1128, 1133 (10th Cir. 1999). A court, however, is not required to "conjure up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985).

### B. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6), should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Thus, there must be more than a "sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993).

---

[4] A civil rights claim under <u>Bivens</u> is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a <u>Bivens</u> claim. See <u>Brown v. Philip Morris Inc.</u>, 250 F.3d 789, 800 (3d Cir. 2001).

5

C.  **Summary Judgment Standard**

For some of the claims, documents outside the pleadings have been presented and will be considered by the Court. Accordingly, these claims will be addressed as ones for summary judgment. See Fed. R. Civ. P. 12(d) ("If, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56."). Federal Rule of Civil Procedure 56(a) provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. A fact is "material" if it will "affect the outcome of the suit under the governing law ...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. On summary judgment all reasonable inferences are to be resolved in favor of the party opposing the motion. See id. at 255. However, "a mere scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Id. at 249. In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party ...." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

### III.  Discussion

A.  **PS 5217.01 Does Not Violate the Ex Post Facto Clause.**

Terrell argues that PS 5217.01 violates the Ex Post Facto Clause of the Constitution, U.S. Const. art 1, § 9, cl. 3, because assignment to a SMU Program inflicts a greater punishment than that to which he was initially sentenced. (Dkt. No. 30-1 at 6-10). The Ex Post Facto Clause prohibits the enactment of laws that "by retroactive application, increase the punishment for a crime after its commission." Garner v. Jones, 529 U.S. 244, 249 (2000). Terrell's argument fails

6

because a change to an inmate's security classification does not constitute punishment under the Ex Post Facto Clause. See e.g., Estrada v. Chavez, No. CV 08-1358, 2009 WL 1383328, at *6 (D. Ariz. May 15, 2009) (holding that because a change in security classification neither increases an inmate's sentence nor results in the loss of good time credits it cannot be a violation of the Ex Post Facto Clause) (citing California Dept. of Corr. v. Morales, 514 U.S. 499, 506 n.3 (1995)); Hinton v. Fed. Bureau of Prisons, 5:08-cv-01012, 2009 WL 3347158, at *3 (S.D. W. Va. Oct. 14, 2009) (holding that a change in classification system does not violate the "inmates' rights under the Ex Post Facto clause because the classification system did not affect the inmates' release dates") (quoting Faraq v. Herdon, 831 F. Supp. 1262, 1265 (D. Md. 1993) aff'd, Briscoe v. Herndon, 56 F.3d 60 (4th Cir. 1995)). Consequently, Terrell's assignment to the SMU Program, which is no more than a change in security classification, does not violate the Ex Post Facto Clause. The Court dismisses this claim.

**B.    Terrell's Allegation that he was Forced into Psychological Treatment Fails to State a Claim.**

Terrell argues that he was forced into psychological treatment without medical justification or a hearing, in violation of his rights. (Dkt. No. 1-1). Terrell, however, provides no factual support of any kind for this allegation. He does not provide any information about the kind of treatment he was forced to undergo or who treated him. Nor does he provide any details regarding the timing of the treatment or its duration. Without providing more than the bare assertion that he was forced into psychological treatment, Terrell's allegation cannot survive the Defendants' motion to dismiss. Because Terrell has not met the pleading requirements set forth in Twombly and Iqbal, Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1949, this Court summarily dismisses Terrell's claim.

**C.    Terrell's Allegation that His Administrative Appeal was Not Handled Appropriately Fails to State a Claim.**

7

Terrell argues that Administrator Watts denied the administrative appeal of his assignment to the SMU Program "without any meaningful review." (Dkt. No. 1-1). However, Terrell does not plead with sufficient specificity, to state a claim, what Administrator Watts did that amounted to a lack of "meaningful review." All that Terrell states in support of his claim is that Administrator Watts "refus[ed] to acknowledge the obvious violation of due process and (BOP) regulations" and that "the violations were apparent on the face of the record." Id. Without providing specific factual allegations to support his claim Terrell has not met the pleading requirements laid out in Twombly and Iqbal. Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1949.

Furthermore, Terrell's allegations fail to state a Bivens claim because he alleges no more than dissatisfaction with the outcome of his appeal. See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("there is no constitutional right to participate in grievance proceedings"); Carter v. Farmer, No.1:11-cv-979, 2011 WL 5508988, at *3 (Nov. 10, 2011) ("It is well-established that inmates do not have a constitutionally protected right to a grievance procedure and no liability exists under § 1983 for a prison administrator's response to a grievance or appeal.").[5] Thus, the Court dismisses this claim.

### D. Terrell's Allegation that Assignment to the SMU Program is a Violation of His Human Rights Fails to State a Claim.

Terrell next argues that his assignment to the SMU Program is a violation of his human rights because the program's use of isolation constitutes torture. (Dkt. No. 1-1). Again, Terrell fails to present any facts in support of his allegation. As stated above, without more than bare assertions, Terrell's claim fails to meet the pleading requirements set forth in Twombly and

---

[5] As noted above, the same legal principles governing a § 1983 claim apply to a Bivens claim. See Brown, 250 F.3d at 800.

8

Iqbal. Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1949. Thus, Terrell's allegation that his assignment to the SMU Program violates his human rights is summarily dismissed.

E. **Terrell's Allegation that PS 5217.01 Was Promulgated in Violation of the APA Fails.**

Terrell argues that PS 5217.01 was promulgated in violation of the APA because it was implemented without an opportunity for notice and comment. However, Terrell's claim fails as a matter of law because the BOP's decisions regarding where to house inmates are exempt from challenge under the APA. See Murray v. Bledsoe, 650 F. 3d 246, 247 n.1 (3d Cir. 2011) (explaining that pursuant to 18 U.S.C. § 3625 the APA's provisions for judicial review of administrative agency decisions do not apply to BOP decisions about where to house inmates governed by 18 U.S.C. § 3621(b)). Because PS 5217.01 is a policy statement governing how inmates are housed, Terrell's APA challenge fails and is dismissed.

F. **Assignment to a SMU Program Does Not Impinge A Liberty Interest and Therefore Does Not Trigger Due Process Protections.**

Terrell's overarching claim that his assignment to a SMU Program violated his right to due process fails as a matter of law. A federal inmate does not have a liberty interest in avoiding transfer to more adverse conditions of confinement. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976) (no liberty interest arising from Due Process Clause because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose.")). Moreover, the mere fact that Terrell was not housed with the general population and did not have access to all of the same privileges as those inmates in the general population does not amount to a constitutional violation giving rise to due process rights. Hewitt v. Helms, 459 U.S. 460, 468, (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a

9

prison sentence."). Because Terrell has alleged no facts suggesting that he has been subject to confinement beyond his term of incarceration or has lost good time credits, he has failed to allege a deprivation requiring due process protections. Therefore, Terrell has failed to state a Bivens claim.

With regard to Terrell's specific allegations, as discussed below, each of these allegations also lacks merit. As a preliminary matter, the Court notes that the violation of BOP guidelines does not create a constitutional violation, as required for a Bivens claim. See Quijada v. Bledsoe, No. 1:CV-08-2022, 2011 WL 1303224, at *7 (M.D. Pa. Mar. 31, 2011) ("[T]he violation of a BOP policy manual, i.e., P.S. 5217.01, is not the basis for a constitutional claim."). Nonetheless, out of an abundance of caution, the Court reviews the merits of each of Terrell's specific allegations.

1. **Terrell's Allegation the Hearing was Not Impartial Fails.**

Terrell alleges his SMU Hearing was not impartial because Hearing Officer Rupert served as Terrell's Discipline Hearing Officer in prior hearings involving Terrell. (Dkt. 1-1 at 1). In support of this allegation, Terrell cites Department of Justice Policy Statement 5270.01 ("PS 5270.01"). (Dkt. No. 30-1 at 3). However, PS 5270.01 pertains to Special Housing Units within the BOP. Special Housing Units are distinct from the SMU Program and as such the guidelines in this document are inapplicable to Terrell's assignment to the SMU Program.

PS 5217.01 lays out the guidelines for serving as a Hearing Administrator at an SMU Hearing. The only officers prohibited from serving as a SMU Hearing Administrator are those that have been a witness or victim in any relevant disciplinary action involving the inmate; PS 5217.01 does not prohibit officers who have presided over disciplinary hearings involving the inmate from serving as the inmate's SMU Hearing Administrator. See Marshal v. Lappin, No. 2:10-CV-3, 2010 WL 5418929, at *2 (N.D. W. Va. Dec. 23, 2010) ("the mere fact that [the

10

Hearing Administrator] presided over DHO hearings involving the plaintiff does not make [the Hearing Administrator] a "witness" within the meaning of PS 5217.01"). Terrell has not alleged that Hearing Officer Rupert was a witness or victim in any prior proceeding involving Terrell and Hearing Officer Rupert has averred that he has not participated in such capacity. (Dkt. No. 24-1 at 2). Accordingly, Hearing Officer Rupert was not prohibited from serving as Terrell's SMU Hearing Administrator and the Court dismisses this claim.

### 2. Terrell's Allegation that Hearing Officer Rupert Ignored the Requirements in PS 5217.01 Fails.

Terrell argues Hearing Officer Rupert ignored the requirement that the "Regional Disciplinary Administrator" serve as his SMU Hearing Officer. The Court presumes Terrell meant to argue that Hearing Officer Rupert ignored the requirement that the "Regional Director" serve as his SMU Hearing Officer, since the term "Regional Disciplinary Administrator" does not appear in PS 5217.01. However, Terrell misinterprets PS 5217.01. Under the regulations, all that is required is for the Regional Director to <u>appoint</u> a Hearing Administrator; the Regional Director is not required to <u>serve</u> as the Hearing Administrator. PS 5217.01 (emphasis added). In accordance with PS 5217.01 the Regional Director determined there was sufficient evidence to warrant a hearing and assigned Hearing Officer Rupert to serve as the SMU Hearing Administrator. (Dkt. No. 24-3). Therefore, Hearing Officer Rupert properly served as Terrell's SMU Hearing Administrator by virtue of his appointment as Terrell's SMU Hearing Administrator by the Regional Director. Accordingly, the Court dismisses this claim.

### 3. Terrell's Allegation that He Was Denied the Opportunity to Present Exculpatory Evidence and Denied the Right to Counsel Fails.

Terrell asserts that he was denied the opportunity to present exculpatory evidence at his SMU Hearing and denied the right to counsel. Terrell's complaint contains no more than the naked assertion that he was denied the right to present exculpatory evidence. He does not

11

specify what evidence he would have produced either in his complaint or in his subsequent filings. Furthermore, the uncontested facts show that Terrell made an oral statement at his hearing. (Dkt No. 1-3.) Accordingly, without more factual support this Court finds that Terrell has not met the pleading requirements laid out in Twombly and Iqbal. Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1949. Therefore, the Court dismisses this claim.

Second, an inmate's transfer to a SMU Program does not implicate a liberty interest and thus does not trigger due process protections, such as the right to counsel. PS 5217.01 merely allows an inmate to request a staff member to assist him or her in gathering information for the SMU Hearing. PS 5217.01 at 3. Terrell has not alleged that he requested assistance and was denied assistance. Moreover, even if Terrell had made such an allegation, as noted above, the mere violation of BOP procedures does not give rise to a constitutional claim. See Quijada, 2011 WL 1303224, at *7. Because Terrell has failed to produce any evidence in support of his allegations, the Court dismisses this claim.

### 4. Failure to Receive Proper Notice of a SMU Hearing Does Not Give Rise to a Due Process Violation.

In his response to the Defendants' motion to dismiss, or in the alternative, motion for summary judgment Terrell attacks the notice he received of his SMU Hearing on two grounds: (1) he did not receive the SMU Hearing Notice until after the hearing had taken place, in violation of PS 5217.01 and his due process rights, and (2) the SMU Hearing notice was deficient because it did not contain a required third-party signature, and thus was a violation of his right to due process. (Dkt. No. 30-1).

Terrell argues that he did not receive a copy of his SMU Hearing notice until after his arrival at the SMU Program at FCI Talladega. (Dkt. No. 30-1 at 2). Terrell's argument is difficult to follow, but Terrell appears to have submitted to the Court a copy of the SMU Hearing

12

notice he alleges he received after his arrival at FCI Talladega ("Terrell's SMU Notice"). (Dkt. No. 30, Exhibit E). Terrell argues that the differences between his copy and the copy that the Defendants submitted ("Defendants' SMU Notice"), (Dkt. No. 24-2),[6] prove Hearing Officer Rupert lied in his Declaration when he said Terrell received the SMU Hearing notice before the hearing. (Dkt. No. 24-1).

Comparing the two versions of the SMU Hearing notice, the Court sees three differences. First, the date and time indicated on page 1 of the notices differs. Terrell's SMU Notice lists the hearing date as 4-14-06 and the time as 6:20pm, while the Defendants' SMU notice lists the hearing date as 4-14-09 and the time as 6:15pm. Second, there is a discrepancy between the handwritten notations at the bottom of page 1 of the notices. Terrell's SMU Notice does not contain any handwritten notations, while the Defendants' SMU notice includes the word "comment" and the date 4/17/09 and time "10 03." Third, there are discrepancies on page 3, the signature page. On Terrell's SMU Notice the only signature is that of D. Rupert, indicating Hearing Officer Rupert prepared the notice on April 13, 2009. On the Defendants' SMU Notice, page 3 also indicates that Terrell refused to acknowledge receipt of the notice and that a copy of the notice was delivered by B. Flanary, a prison staff member, at 5:40 on April 14, 2009. The Court notes that pages 2 and 4 of the notices appear to be identical.

The Court need not address Terrell's allegations of perjury against Hearing Officer Rupert because, irrespective of the differences between the notices, Defendants are entitled to summary judgment. Assuming arguendo that Terrell did not receive notice of the SMU Hearing prior to the hearing, Terrell cannot show that his due process rights have been violated. As

---

[6] The SMU Hearing Notice submitted by Terrell as Dkt. No. 30, Attachment 2, Exhibit E-2 appears to be identical to the Notice submitted by Defendants as Dkt. No. 24-2. Terrell never references Dkt. No. 30-2, Exhibit E-2 in his argument, instead making reference to "defendant(s) document(s) of hearing notice." (Dkt. No. 30-1 at 2). Presumably Terrell submitted the duplicate of the Defendants' Exhibit to aid in the Court's comparison.

13

detailed above, assignment to a SMU Program does not impinge a liberty interest and thus does not give rise to due process protections. Because Terrell has no right to due process in his assignment to a SMU unit, it follows that he has no due process right in the procedures used to effectuate that assignment – including the right to notice of the SMU Hearing.

Second, Terrell alleges that his SMU Hearing notice was not signed by the required third-party in violation of his due process rights. In support of his allegation, Terrell cites 28 C.F.R. § 524.70. The Court notes, however, that 28 C.F.R. § 524.70 relates to the classification of inmates for the BOP's Central Inmate Monitoring system and appears unrelated to the SMU Program. Moreover, this Court can find no authority that requires a third-party signature on the SMU Hearing notice. Even assuming that such authority existed, Terrell would not be able to state a claim for a violation of his due process rights. Again, because Terrell has no right to due process in his assignment to a SMU unit, he has no due process right in the procedures used to effectuate that assignment – specifically in having the SMU Hearing notice signed by a third-party. Consequently, the Court finds that Defendants are entitled to summary judgment on Terrell's claims regarding deficiencies with his SMU Hearing notice.

## G. Transfer to a SMU Program Does Not Constitute "Atypical and Significant Hardship" and Thus Does Not Implicate Due Process Protections.

Terrell tries to escape the fact that assignment to a SMU Program does not implicate his right to due process by arguing that the conditions in the SMU Program are akin to those imposed by state supermax prisons and thus impose "atypical and significant hardship."[7] (Dkt. No. 30-1 at 4-5). Terrell supports this allegation with affidavits attesting to the poor conditions at FCI Talladega and including allegations of mistreatment by prison officials. (Dkt. No. 30-3).

---

[7]"Supermax facilities are maximum-security prisons with highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." Wilkinson v. Austin, 545 U.S. 209, 213 (2005).

14

Terrell is correct to the extent that the Supreme Court has held that "inmates have a protected liberty interest in avoiding assignment at [supermax prisons]." Wilkinson, 545 U.S. 220. The Court explained that because of the conditions of confinement, incarceration at a supermax facility imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 223-224 (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)). Terrell's argument fails, however, because SMU Program conditions are markedly different than the conditions of confinement at a supermax facility. As the Supreme Court noted, the duration of confinement differentiates supermax facilities from most other restrictive types of confinement, such as solitary confinement. Placement in a supermax facility is indefinite and after the initial review is only reviewed annually. Wilkinson, 545 U.S. at 224. Second, placement at a state supermax facility disqualifies an inmate from parole consideration. Id.

Conversely, placement in the SMU Program is limited in duration. The BOP expects inmates to be able to complete the four-level SMU Program within 18-24 months.[8] PS 5217.01 at 1. Further, inmates are evaluated for level progression at least every 90 days. Id. at 7. Second, placement in an SMU Program does not result in the loss of good time credits.[9] Finally, the Court notes that the undisputed facts establish that placement in the SMU Program is designed to provide additional programming opportunities for inmates who exhibit disruptive patterns of behavior. PS 5217.01. In light of this goal, other courts have found that "the conditions in the SMU are reasonable and proportionate and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life." Millhouse v. Bledsoe, 1:CV-09-01953, 2011 WL 332417, at *6 (M.D. Pa. Jan. 31, 2011).

---

[8] As inmates progress through the program, the conditions of confinement become less severe. PS 5217.01 at 7-12.
[9] Federal inmates are not eligible for parole.

15

The allegations contained in the affidavits submitted by Terrell and his fellow inmates cannot overcome these basic differences.[10] While the affidavits contain a list of complaints too numerous to list in their entirety, the Court notes the complaints relate to use of physical force and intimidation techniques by the staff against inmates, "double celling" of inmates in cells designed for one inmate, lighting in cells that remains on 24 hours a day, excessive use of restraints, inadequate sanitation facilities, constant noise, lack of adequate ventilation, insect and pest infestation, inadequate medical care, inadequate food, the inability to participate in work programs, and the lack of television and contact visits. (Dkt. No. 30-3). None of the affidavits suggest that the inmates are being kept in the SMU Program indefinitely or that being placed in the SMU Program has resulted in the loss of good time credits.

Moreover, none of the grievances in the affidavits are sufficient to establish a constitutional violation as required for a <u>Bivens</u> claim. With regard to the allegations against the staff, the allegations are conclusory and lack any factual support. Accordingly, they must be rejected. See <u>Mayers v. Smith</u>, No. 00-1961, 2002 WL 32502356, at *4 (E.D. Va. Apr. 4, 2002) (rejecting conclusory allegations of misconduct by prison officials as failing to raise a <u>Bivens</u> claim). The allegations concerning the physical conditions in the prison and the terms of confinement must also be rejected as failing to give rise to a constitutional violation. See <u>Mitchell v. Dodrill</u>, 696 F. Supp.2d 454, 470 (M.D. Pa. 2010) (holding defendant entitled to summary judgment when plaintiff has offered no more than bare assertions of poor cell condition, pest infestation, inadequate sanitation, commissary restrictions, and double-celling). Because the conditions of confinement between supermax facilities and the SMU Program are

---

[10] To the extent Terrell makes claims against the prison officials in Alabama, this Court does not have jurisdiction over those claims. See <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985). Thus, Terrell's complaints about the conditions at FCI Talladega are not properly before this Court. However, out of an abundance of caution, the Court construes these complaints as support for Terrell's claim that transfer to the SMU Program constitutes "atypical and significant hardship."

markedly different, the Court finds that no rational trier of fact could find that assignment to the SMU Program constitutes "atypical and significant hardship." Matsushita, 475 U.S. at 586–87.

## H. Defendants Are Entitled to Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. (Dkt. No. 24). Relying on Short v. Smoot, 436 F.3d 422, 426 (4th Cir. 2006), Terrell argues that because the Defendants were of "sound mind" and knowingly violated his due process rights and the Ex Post Facto Clause, they are not entitled to qualified immunity. (Dkt. No. 30-1). The Court rejects Terrell's argument and finds that the Defendants are entitled to qualified immunity.

Qualified immunity "shields government officials from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Trulock v. Freeh, 275 F.3d 391, 399 (4th Cir. 1993) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The purpose of such immunity is to "protect[] law enforcement officers from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.'" Wilson v. Collins, 141 F.3d 111, 114 (4th Cir. 1998) (quoting Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992)).

As a threshold question, the Court must determine whether the Defendants' actions fall within the scope of their duties. Leverette v. Bell, 247 F.3d 160, 165 (4th Cir. 2001). In making this determination courts are directed to consider whether the action was authorized by statute or regulation. In re Allen, 106 F.3d 582, 595 (4th Cir. 1997). Here, Defendants' actions clearly fall within the scope of their duties. PS 5217.01 undeniably authorized Hearing Officer Rupert to conduct the SMU Hearing, prepare his recommendation, and pass that recommendation on to the Regional Director. PS 5217.01 at 2-3. Administrator Watts, in his capacity as Administrator of National Inmate Appeals, was authorized to review Terrell's appeal of his assignment to the SMU Program. Id. at 4.

17

Officials acting within the scope of their authority are entitled to qualified immunity unless the facts, viewed in the light most favorable to the party alleging harm, demonstrate the deprivation of a constitutional right that was "clearly established at the time of the purported violation." Leverette, 247 F.3d at 166. The Court agrees with Defendants, as discussed in detail above, that Terrell's placement in the SMU Program did not deprive him of any clearly established right because Terrell has no liberty interest in avoiding placement in the SMU Program. Thus, the Court holds Defendants are entitled to qualified immunity.

## IV.   Terrell's Other Pending Motions

Also pending before the Court at this time are Terrell's Motion for Discovery (Dkt. No. 32) and the Defendants' Response (Dkt. No. 34), Terrell's Motion for a Jury Trial (Dkt. No. 33), and Terrell's Motion for Sanctions (Dkt. No. 41).

In his motion for Discovery, Terrell requests records from the Central Inmate Monitoring System ("CIMS"). The Court denies this request because, as Defendants' properly note, the Court cannot compel the Defendants to produce documents that are not within their custody or control. See, e.g., Mauchlin v. Bier, No. 07-CV-02593, 2009 WL 1973511, at *2 (D. Colo. July 8, 2009) ("[T]he Court agrees that in a Bivens action such as this, individual Defendants may not be compelled to produce documents in the exclusive control of the Bureau of Prisons."). Here, the CIMS documents are in the custody and control of the BOP, who is not a party to this suit, and not the custody and control of the individual Defendants.

Second, Terrell's Motion for Sanctions requests sanctions against Defendants for their alleged failure to serve Terrell with a copy of the Defendants' Motion to Dismiss. (Dkt. No. 41). The record reflects that upon Terrell's request the Clerk's Office sent Terrell a courtesy copy of the Defendants' motion. (Dkt. No. 26). Finding no violation of Fed. R. Civ. Pro. 11(b), the

18

Court denies Terrell's motion for sanctions. Finally, the Court having decided the motion to dismiss, or in the alternative, motion for summary judgment in the Defendants' favor, dismisses Terrell's Motion for a Jury Trial as moot.

## V. Conclusion

For all of these reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment will be granted and Terrell's cross-motion for Summary Judgment is denied. Terrell's Motion for Sanctions and Motion for Discovery are denied. Finally, the Court dismisses as moot Terrell's Motion for a Jury Trial. An appropriate order follows.

**ENTER**: This 5th day of December, 2011.

_____
Senior United States District Judge

19

Case 7:11-cv-00024-JCT-RSB   Document 44   Filed 12/05/11   Page 19 of 19   Pageid#: 240